UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PHILADELPHIA INDEMNITY INSURANCE COMPANY,<br><br>        Plaintiff,<br><br>v.<br><br>TL FAB, LP, a limited partnership; RENO CONTRACTING, a California Corporation,; and DOES 1 to 25, inclusive<br><br>        Defendants. | Case No.: 17cv306-MDD<br><br>**ORDER DENYING PLAINTIFF AND CROSS-DEFENDANT PHILADELPHIA INDEMNITY INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT OR IN THE ALTERNATIVE MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>**[ECF No. 31]** |
| RENO CONTRACTING, INC., a California Corporation; COYLE/RENO II, a California joint venture; and COYLE RESIDENTIAL, INC., a California corporation,<br><br>        Cross-Complainants,<br><br>v.<br><br>PHILADELPHIA INDEMNITY INSURANCE COMPANY; and DOES 1 through 100, inclusive,<br><br>        Cross-Defendants. | |

1

Plaintiff Philadelphia Indemnity Insurance Company ("Philadelphia") moves the Court for summary judgment or, in the alternative, partial summary judgment. (ECF No. 31). Defendant Reno Contracting, Inc. ("Reno") opposes. (ECF No. 33). Having carefully considered the matters presented and the record, the Court **DENIES** Philadelphia's motion for summary judgment or, in the alternative, partial summary judgment.

## I. FACTUAL & PROCEDURAL BACKGROUND

The evidence presented to the Court in conjunction with the parties' motions reflects as follows.

### A. Insurance Policy

The building project at issue is a 612-unit apartment complex consisting of two, five-story buildings located at 7777-7845 Westside Drive, San Diego. (ECF No. 31-2 at ¶1). This project is both known as the West Park Apartments or the Civita Project (the "Project"). (*Id.*). Philadelphia issued a builders risk policy, Policy No. PHPK1027133, to QF Westpark, LLC covering the Project from May 29, 2013, to January 29, 2016 ("the Policy"). (*Id.* at ¶3). According to the Policy, Philadelphia "will pay for direct physical 'loss' to Covered Property caused by or resulting from any of the Covered Causes of Loss" except as limited or excluded in the policy. (*Id.* at 35). Exclusions to the Covered Causes of Loss include:

> **3.** We will not pay for "loss" caused by or resulting from any of the following. But if "loss" by any of the Covered Causes of Loss results, we will pay for that resulting "loss."
>
> **a.** Faulty, inadequate, or defective materials, or workmanship.

(*Id.* at 39-40).

### B. Damage to Buildings A and B

Beginning on December 2, 2014, and ending on December 4, 2014, a storm brought significant rain and high winds to San Diego. (ECF No. 33-6

at ¶133). At the time of the storm, both buildings were incomplete, though the parties disagree about the extent to which the buildings were finished. (ECF Nos. 33-6 at ¶¶ 6, 134; 31-2 at ¶¶ 6, 7). Reno, in an effort to protect the exposed buildings, installed Visqueen plastic sheeting over open windows and doors. (ECF No. 33-6 at ¶ 135).

During the storm, high winds damaged, and in some cases, destroyed the Visqueen and additional protective measures placed at the then-top-layer of Building B. (*Id.* at ¶136). As a result, rain entered the construction sites, damaging both Buildings A and B ("the Loss"). (ECF Nos. 31-2 at ¶19; 33-6 at ¶19). Water entered Building A through 1) the parking garage structure; 2) the roof assemblies; and 3) the window and exterior door openings. (*Id.*). In Building B, water flowed down incomplete 3-hour fire rated wall assemblies, pooling until it reached the gap between the non-combustible cement fiber board and floor sheathing, where it continued downward to the lower floors. (ECF No. 33-6 at ¶140). The total cost of the Loss, after the deductible, is $491,128.33. (*Id.* at ¶139).

## C. Philadelphia's Denial of Reno's Claim

According to Philadelphia, QF Westpark submitted a claim for water damage to the interior of "buildings" on December 8, 2014. (ECF No. 31-2 at ¶8). After their experts and consultants investigated, Philadelphia informed the insured that the claim was denied under the Policy on September 1, 2015. (*Id.* at ¶42). Philadelphia's denial was based on the determination by an independent engineering firm retained by the insurance company that coverage for the Loss was excluded by "the Policy's provisions including specifically, the water exclusion, the error, omission or deficiency in design or specification exclusion, the rain exclusion, and the faulty workmanship exclusion." (*Id.* at ¶43). According to Reno, Philadelphia's first denial cited

3

the rain exclusion, to which Reno objected on March 16, 2016, arguing that their experts had determined that the rain was not the proximate cause of the loss. (ECF No. 33-6 at ¶141). Reno states that only then did Philadelphia invoke the faulty workmanship exclusion in a response letter sent March 29, 2016. (*Id.* at ¶142). Reno then responded on June 14, 2016, citing *Allstate v. Smith*, to challenge Philadelphia's use of the faulty workmanship exclusion. (*Id.* at 143). On June 20, 2016, Philadelphia responded that because "the *Allstate* decision is a Ninth Circuit decision," it "is not binding in California." (*Id.* at 144). Reno sent its last demand for Philadelphia to withdraw the denial on November 28, 2016. (*Id.* at ¶146). Philadelphia then filed the instant lawsuit on December 1, 2016, for reimbursement of money paid to QF Westpark for a previous fire loss. (*Id.* at ¶147).

## **II. DISCUSSION**

**A. Legal Standard**

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall be rendered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). An issue of fact is genuine only if there is sufficient evidence for a reasonable jury to find for the nonmoving party. See *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). "The mere existence of a scintilla of evidence … will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Id.* at 252. At the summary judgment stage, evidence must be viewed in the light most favorable to the nonmoving party and all justifiable inferences are to be drawn in the nonmovant's favor. See *id.* at

255.

**B. Breach of Contract**

Reno contends that Philadelphia breached the insurance contract by denying coverage for the claim. According to Reno, the claim was not excluded pursuant to the Policy's faulty workmanship clause. Philadelphia disputes such.

"Because this diversity case arises in California, California law applies." *Allstate Ins. Co. v. Smith*, 919 F.2d 447, 449 (9th Cir. 1991). Under California law, "interpretation of [insurance] policy language is a question of law" and "follows the general rules of contract interpretation." *MacKinnon v. Truck Ins. Exchange*, 31 Cal 4th 635, 641 (2003). "The interpretation of a contract … is solely a judicial function unless the interpretation turns on the credibility of extrinsic evidence." *American Alternative Ins. Corp. v. Superior Court*, 135 Cal. App. 4th 1239, 1245 (2006).

"Policy language is interpreted in its ordinary and popular sense and as a laymen would read it and not as it might be analyzed by an attorney or an insurance expert." *E.M.M.I., Inc. v. Zurich Am. Ins. Co.*, 32 Cal. 4th 465, 471 (2004) (internal quotations omitted). On the other hand, a dictionary definition of a word "does not necessarily yield the 'ordinary and popular' sense of the word if it disregards the policy's context." *MacKinnon*, 31 Cal. 4th at 649.

"If contractual language is clear and explicit, it governs. *Bank of the West v. Superior Court*, 2 Cal. 4th 1245, 1264 (1992). But, if there is ambiguity, the "[a]mbiguity is resolved by interpreting the ambiguous provisions in the sense the [insurer] believed the [insured] understood them at the time of formation." *E.M.M.I.*, 32 Cal. 4th at 470 (internal quotations omitted); see also *Bank of the West*, 2 Cal 4th at 1264 ("If the terms of a

promise are in any respect ambiguous or uncertain, it must be interpreted in the sense in which the promisor believed, at the time of making it, that the promisee understood it." (internal quotations omitted). "If application of this rule does not eliminate the ambiguity, ambiguous language is construed against the party who caused the uncertainty to exist." *E.M.M.I.*, 32 Cal 4th at 470 (internal quotation marks omitted). That is, the ambiguity is "resolved against the insurer and … if semantically permissible, the contract will be given such construction as will fairly achieve its object of providing indemnity for the loss to which the insurance relates." *Merced Mut. Ins. Co., v. Mendez*, 213 Cal. App. 3d 41 (1989) (internal quotations omitted). "[S]o long as coverage is available under any reasonable interpretation of an ambiguous clause, the insurer cannot escape liability." *State Farm Mut. Auto. Ins. Co. v. Jacober*, 10 Cal. 3d 193, 197 (1973).

Philadelphia asserts that the Loss was caused by three probable proximate causes: "faulty workmanship, deficient design, or the rain itself." (ECF No. 31-1 at 6). In response, Reno argues that through its experts, the proximate cause of the loss was "inadequate securing and protection of the work against the elements" and "inadequate provision and maintenance of temporary protection measures." (ECF No. 33-6 at ¶140).

Of all potential proximate causes of the Loss, faulty workmanship is the agreed upon common denominator, however the parties disagree as to whether the faulty workmanship exclusion in the Policy bars coverage.[1]

---

[1] Philadelphia argues that the Court should follow the holding in *Julian v. Hartford Underwriters Ins. Co.*, 35 Cal. 4th 747 (2005), rather than *Allstate*, to exclude coverage. (ECF No. 31-1 at 15). Given that the Court need not address the presence of multiple efficient proximate causes, *Julian* is inapplicable to this discussion.

Accordingly, the only question that needs to be answered here is whether the faulty workmanship exclusion bars coverage for the Loss. The answer to this question turns on whether the Court must rely on *Allstate vs. Smith*. 929 F.2d 447 (9th Cir. 1991). Philadelphia argues that "California case law has evolved and departed from" *Allstate's* interpretation of faulty workmanship exclusions. (ECF No. 31-1 at 6). Reno, however, argues that *Allstate* requires finding that the exclusion is ambiguous and when resolved, does not bar coverage for the loss. (ECF No. 33 at 18-19).

*Allstate*, simply stated, stands for the position that a faulty workmanship exclusion open to multiple interpretations regarding a faulty process or product is resolved in favor of the insured. 929 F.2d 447 (9th Cir. 1991). There, the insured's failure to cover exposed parts of the building before a storm resulted in significant losses. *Id.* at 449. The insurance company denied coverage, invoking the policy's faulty workmanship exclusion. *Id.*. The Ninth Circuit found the policy's exclusion to be ambiguous as workmanship could be read to mean the final product or the process by which the insured property was constructed. *Id.* at 450. As a result, the Court adopted the interpretation most favorable to the insured, finding that the faulty workmanship exclusion refers to the final product and therefore coverage was not barred, as the loss occurred before construction ended. *Id.* at 451.

Reno argues that because a faulty workmanship exclusion requires "the presence of an object to evaluate," there can be no exclusion for a loss that occurred well before the Project (object) was finished. (ECF No. 33 at 18). To support the use of *Allstate*, Reno cites *Century Theaters, Inc. v. Travelers Prop. Cas. Co. of Am.*, No. C-05-3146 JCS, 2006 WL 708667 (N.D. Cal. Mar. 20, 2006). There, heavy rains damaged an unfinished movie theater

construction project, the insurance claims for which were denied citing the faulty workmanship exclusion. *Id.* at *3. Stating "…in light of the similarities between the circumstances here and those in *Allstate*, the Court considers itself bound by *Allstate* on the question of whether the Faulty Workmanship Exclusion covers construction processes." *Id.* at *9. Philadelphia does not discuss the applicability of *Century Theaters* in their motion or reply to Reno's opposition.

Philadelphia attempts to rebut *Allstate* by citing a number of out-of-state cases with varying background facts. (ECF No. 31-1 at 19). Further, Philadelphia states that no California court has followed *Allstate* in twenty years. While it is true that the two state court decisions that discuss *Allstate* ultimately did not award benefits to the insured, neither of these cases analyzed *Allstate's* treatment of faulty workmanship exclusions. See, *Herman Weissker, Inc. v. Lexington Ins. Co.*, No. B168031, 2004 WL 2283937 (Cal. Ct. App. Oct. 12, 2004); *Holesapple v. Aetna Cas. & Sur. Co.*, No. C033615, 2002 WL 749198 (Cal. Ct. App. Apr. 29, 2002). In *Herman Weissker*, endorsements to the insurance policy made the faulty workmanship exclusion explicit, thus eliminating the need to consider *Allstate's* holding. *Herman Weissker,* No. B168031, 2004 WL 2283937, at *4. In *Holesapple*, the court ultimately declined to follow *Allstate's* efficient proximate cause analysis, not the void for vagueness holding relevant to this case. *Holesapple*, No. C033615, 2002 WL 749198, at *11. Additionally, several California federal courts have followed Allstate's reasoning. (See, *Century Theaters*, *supra*; *Berman v. Amex Assur. Co.*, 2011 U.S. Dist. LEXIS 23716 (C.D. Cal. Feb. 22, 2011); *Berman v. Amex Assur. Co.*, 2008 U.S. Dist. LEXIS 127228 (C.D. Cal. Nov. 14, 2008); and *Schaber v. Allstate Ins. Co.*, 2007 U.S. Dist. LEXIS 92942 (C.D. Cal. Dec. 18, 2007)). To the extent that Philadelphia is

8

asking the Court to establish a novel approach to faulty workmanship exclusions, the Court declines. The "assertion that the Court need not follow *Allstate* is unpersuasive in light of [insurer]'s failure to identify any meaningful differences between this case and *Allstate*...." *Century Theaters*, No. C-05-3146 JCS, 2006 WL 708667, at *8 (N.D. Cal. Mar. 20, 2006). Philadelphia lastly argues that should the Court decide that *Allstate* applies, the faulty product was actually the Visqueen itself and not the finished Project. (ECF No. 31-1 at 19-21). Philadelphia's "Visqueen as the product" argument is not supported by any proffered facts or law.

Accordingly, the Court concludes that *Allstate* remains relevant and applicable law, and that the faulty workmanship exclusion, as a matter of law, does not justify a denial of coverage for the loss at issue in this case. As a result, Philadelphia's motion for summary judgment with respect to breach of contract is **DENIED**.

## C. Bad Faith

Philadelphia also moves for summary judgment on Reno's claim of bad faith. "In addition to the duties imposed on contracting parties by the express terms of their agreement, the law implies in every contract a covenant of good faith and fair dealing. The implied promise requires each contracting party to refrain from doing anything to injure the right of the other to receive the benefits of the agreement. The precise nature and extent of the duty imposed by such an implied purpose will depend on the contractual purposes." *Egan v. Mutual of Omaha Ins. Co.*, 24 Cal.3d 809, 817 (1979). "[A]n insurer's responsibility to act fairly and in good faith in handling an insurer's claim 'is not the requirement mandated by the terms of the policy itself-to defend, settle, or pay. It is the obligation under which the insurer must act fairly and in good faith in discharging its contractual

9

responsibilities.'" *California Shoppers, Inc. v. Royal Globe Ins. Co.*, 175 Cal.App3d 1, 54 (1985).

An insurer's denial of or delay in paying benefits gives rise to damages only if the insured shows the denial or delay was unreasonable. *Frommoethelydo v. Fire Ins. Exchange*, 42 Cal.3d 208, 214–215 (1998). Further "an insurer denying or delaying the payment of policy benefits due to the existence of a genuine dispute with its insured as to the existence of coverage liability or the amount of the insured's coverage claim is not liable in bad faith even though it might be liable for breach of contract." *Chateau Chamberay Homeowners Assn. v. Associated Internat. Ins. Co.*, 90 Cal. App. 4th 335, 347 (2001).

The genuine dispute rule does not relieve an insurer from its obligation to thoroughly and fairly investigate, process and evaluate the insured's claim. A genuine dispute exists only where the insurer's position is maintained in good faith and on reasonable grounds. *Chateau Chamberay,* 90 Cal. App. 4th at 348–349; *Guebara v. Allstate Ins. Co.* 237 F.3d 987, 996 (9th Cir. 2001). Nor does the rule alter the standards for deciding and reviewing motions for summary judgment. "The genuine issue rule in the context of bad faith claims allows a court to grant summary judgment when it is undisputed or indisputable that the basis for the insurer's denial of benefits was reasonable.... On the other hand, an insurer is not entitled to judgment as a matter of law where, viewing the facts in the light most favorable to the [nonmovant], a jury could conclude that the insurer acted unreasonably." *Amadeo v. Principal Mut. Life Ins. Co.*, 290 F.3d 1152, 1161-62 (9th Cir. 2002). Thus, an insurer is entitled to summary judgment based on a genuine dispute over coverage only where there is an absence of triable issues as to whether the disputed position upon which the insurer denied the claim was

reached reasonably and in good faith.

In its motion for summary judgment, Philadelphia first argues that as there is no coverage under the Policy, there can be no bad faith. (ECF No. 31-1 at 25). Philadelphia asserts that should the Court find coverage under the Policy, the genuine dispute doctrine should apply, and that their investigation was "entirely reasonable." Without citing to the record, Philadelphia asserts that it was "only after conducting a thorough investigation of the claim, and relying up on its cause and origin consultant's findings and conclusion" that the claim was denied. (*Id*. at 27).

Reno argues that denying the claim was unreasonable and that Philadelphia's behavior has been "rife with bad faith conduct" from the time of the denial to the present. (ECF No. 33 at 25-29). Reno indicates that it first challenged Philadelphia's initial denial of coverage using the rain exclusion, as that policy rationale was in direct conflict with Reno's expert's findings that weather was not the proximate cause of the Loss. (ECF No. 33-6 at ¶141). Only then did Philadelphia cite the faulty workmanship exclusion. (Id. at ¶142). When Reno challenged Philadelphia's use of the faulty workmanship exclusion, Philadelphia communicated that "the *Allstate* decision is a Ninth Circuit decision which is not binding in California" and again refused to reopen the investigation. (*Id*. at ¶144). Further, Reno argues that Philadelphia's decision to ignore Reno's demand to withdraw Philadelphia's lawsuit against Reno for reimbursement of money paid to QF Westpark for a previous fire loss demonstrated bad faith as by law an insurance company may not seek subrogation from its own insured. (*Id*. at ¶¶148, 149).

Philadelphia insists that it acted reasonably while Reno asserts and points to facts in support of their contention that they did not. This is a

11

genuine dispute of material fact for the trier of fact to resolve. Accordingly, Philadelphia's motion for summary judgment with respect to Reno's bad faith is **DENIED**.

**D. Punitive Damages**

Finally, Philadelphia moves for summary judgment with respect to punitive damages on the bad faith claims.

"Punitive damages are available if in addition to proving a breach of the implied covenant of good faith and fair dealing proximately causing actual damages, the insured proves by clear and convincing evidence that the insurance company itself engaged in conduct that is oppressive, fraudulent, or malicious." *Amadeo*, 290 F.3d at 1164 (citing, inter alia, Cal. Civ. Code § 3294(a)). "'Malice' means conduct which is intended by the defendant to cause injury to the plaintiff or despicable conduct which is carried on by the defendant with a willful and conscious disregard of the rights or safety of others." Cal. Civ. Code § 3294(c)(1). "'Oppression' means despicable conduct that subjects a person to cruel and unjust hardship in conscious disregard of that person's rights." *Id.* § 3294(c)(2). "An employer shall not be liable for [punitive] damages ..., based upon acts of an employee of the employer, unless the employer ... authorized or ratified the wrongful conduct for which the damages are awarded or was personally guilty of oppression, fraud, or malice. With respect to a corporate employer, the advance knowledge and conscious disregard, authorization, ratification or act of oppression, fraud, or malice must be on the part of an officer, director, or managing agent of the corporation." *Id.* § 3294(b).

"[T]he relationship of insurer and insured is inherently unbalanced; the adhesive nature of insurance contracts places the insurer in a superior bargaining position. The availability of punitive damages is thus compatible

with recognition of insurers' underlying public obligations and reflects an attempt to restore balance in the contractual relationship." *Egan v. Mut. of Omaha Ins. Co.*, 24 Cal. 3d 809, 820 (1979). "'Determinations related to assessment of punitive damages have traditionally been left to the discretion of the jury.'" *Amadeo*, 290 F.3d at 1165 (quoting *Egan*, 24 Cal.3d at 821, 169 Cal.Rptr. 691, 620 P.2d 141).

As discussed above, viewing the evidence in the light most favorable to Reno, a reasonable jury could find that Philadelphia acted in bad faith in denying Reno's claim. Philadelphia's designated deponent, John Kirby, testified in deposition that Philadelphia's consistent approach disregards *Allstate* when applying the faulty workmanship exclusion to California losses. (ECF No. 33-6 at ¶145). Viewing the evidence in the light most favorable to Reno, a reasonable jury could find that Philadelphia's actions were "willful and rooted in established company practice." *Id.* at 1165 (quotation omitted); *cf. id.* ("Viewed most favorably to Amadeo, there is sufficient evidence that the denial of her claim was not simply the unfortunate result of poor judgment, but rather resulted from Principal's plainly unreasonable interpretation of its policy and the deliberate restriction of its investigation in a bad faith attempt to deny benefits due to Amadeo. Thus a jury might conclude that Principal's actions were willful and rooted in established company practice.") (quotations omitted). Accordingly, Philadelphia's motion for summary judgment with respect to punitive damages is **DENIED**.

///
///
///
///
///

## III. CONCLUSION

Based on the foregoing, **IT IS HEREBY ORDERED** that the Motion for Summary Judgment, or in the alternative Motion for Partial Summary Judgment, is **DENIED**.

Dated: August 2, 2018

Hon. Mitchell D. Dembin
United States Magistrate Judge